IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JOHN R. SWAN                                            PLAINTIFF

v.                          Civil No. 10-2015

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                         DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, John Swan, brings this action under 42 U.S.C. § 405(g), seeking judicial review

of a decision of the Commissioner of Social Security Administration (Commissioner) denying

his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the

Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this

judicial review, the court must determine whether there is substantial evidence in the

administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I.      Procedural Background:**

The plaintiff filed his application for DIB on June 12, 2008, alleging an onset date of

February 10, 2008, due to back pain, hypertension, diabetes, shoulder pain, knee pain, coronary

artery disease ("CAD"), arthritis, obesity, and sleep apnea.  Tr. 47, 91, 128, 137.

An administrative hearing was held on January 29, 2009.  Tr. 11-41.  Plaintiff was

present and represented by counsel.  At this time, plaintiff was 55 years of age and possessed a

high school education.  Tr. 15, 52.  He had past relevant work ("PRW") experience as a meat

grader, manager, production worker, and salesman.  Tr. 113, 129, 135, 147.

On August 24, 2009, the Administrative Law Judge ("ALJ") concluded that, although

severe, plaintiff's degenerative disk disease did not meet or equal any Appendix 1 listing.  Tr.

AO72A
(Rev. 8/82)

49-50.  He noted that Plaintiff also suffered from diabetes, status post fracture of the left clavicle, and obesity, but concluded that these impairments were non-severe.   The ALJ determined that plaintiff maintained the residual functional capacity ("RFC") to perform light work with the following limitations: he could sit for one hour at a time for a total of six hours; stand for two hours for a total of six hours, walk for thirty minutes for a total of two hours; could not push/pull with the bilateral lower extremities; could only occasionally balance, stoop, crouch, crawl, and climb ramps and stairs; and, could never kneel or climb ladders, ropes, or scaffolds.  Tr. 50-52. With the assistance of a vocational expert, the ALJ then found that plaintiff could return to his PRW as a meat grader.  Tr. 52.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on January 8, 2010.  Tr. 1-3.  Subsequently, plaintiff filed this action.  ECF No. 1.  This case is before the undersigned by consent of the parties.  Both parties have filed appeal briefs, and the case is now ready for decision.  ECF No. 11, 12.

## II.     Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id*.  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id*.  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome,

2

or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

A.     **The Evaluation Process**:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age,

3

education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.   Evidence Presented:

Plaintiff submitted a number of medical records in support of his claim for disability. However, many of the records submitted are dated outside the relevant time period.  Tr. 261, 270-287, 318-349, 354-399, 402-502, 510-562.  In 2001, a carotid doppler revealed bilateral mild carotid artery stenosis.  Tr. 370-371.  However, a CT of Plaintiff's brain was negative.  Tr. 372. This same year, Plaintiff had a left ventricular ejection fraction rate of 49 percent.  Tr. 382.

In 2002, records indicate that Plaintiff was also suffering from coronary artery disease ("CAD").  Tr. 354.  In March, Dr. Paul Bean noted that he was status post percutaneous transluminal coronary angioplasty and stenting, but he had experienced no recurrent symptoms of chest pain.  Tr. 355, 357.  He was also suffering from sleep apnea, which was well controlled via the use of a C-Pap.  Tr. 355-357.

We also acknowledge Plaintiff's history of a TIA in 2001, but note there has been no additional evidence of any further related symptoms.  Tr. 395-397.

Plaintiff had a history of uncontrolled diabetes.  Treatment notes seem to go back at least as far as 2001.  In February 2007, Dr. Muhammad Houri, an endocrinologist, treated Plaintiff. Tr. 596-597.  At this time, Plaintiff was taking Glucophage.  His A1C level in November 2006 had been 11.8 and was now up to 12.1, and his blood sugar readings were consistently in the 200 and 300 range.  Dr. Houri diagnosed Plaintiff with uncontrollable diabetes and CAD.  He prescribed Amaryl and increased water intake.  Tr. 396-397.  Plaintiff had two additional appointments with Dr. Houri in March 2007.  Tr. 594-595, 598-599.  At this time, his Amaryl

4

dosage was increased and he was advised to change his eating habits.  Benicar also appears to have been added to treat his hypertension.  Tr. 594-595, 598-599.

Records indicate that Plaintiff was struck by a forklift at work in 2006, and suffered a broken left shoulder.  Tr. 146, 408.  X-rays revealed a left greater tuberosity fracture.  Tr. 336-349.  Plaintiff was treated conservatively by Dr. Keith Bolyard and released from his care in December 2006, after only two months of treatment.  Tr. 336-349.

In 2007, Plaintiff also fell on a root and injured his lower back.  Tr. 146, 215.  Treatment notes indicate that he received chiropractic treatment from Dr. Barry Southerland for lower back pain between April 2007 and June 2007.  Tr. 215.  Edema and muscle spasms were noted, but improved over the course of treatment.   X-rays revealed degenerative changes of the thoracolumbar junction with no acute osseous abnormality identified involving the lumbar spine. Tr. 303.  From June 20, 2007, until August 31, 2007, he was treated by Dr. Thomas Cheyne, an orthopedist.  Tr. 270-287, 318-335.  Dr. Cheyne treated him conservatively via physical therapy, Mobic, Medrol, electric stimulation, and moist heat.  On August 31, 2007, he released Plaintiff from his care and gave him a work release for October 1, 2007, stating there was nothing else he could do for him.  He also suggested that Plaintiff seek a different line of work that did not require him to use his back and urged him to lose 50 pounds.  Tr. 270.

An MRI of Plaintiff's lumbar spine performed in July 2007, revealed a disk bulge at the L4-5 level mildly eccentric to the left that might be impinging minimally upon the inferior recess of the neural foramina on the left and a mild spur.  Tr. 280.  The L5-S1 level showed mild disk bulging also with minimal eccentric to the left and no encroachment.  Tr. 280.

5

Plaintiff returned for additional chiropractic treatment in October 2007, and was treated for approximately one month.  Tr. 235-344.  He then sought additional treatment in January 2008, at which time moderate edema and lumbar muscle spasms were documented. Tr. 245.  At this time, Plaintiff was reportedly prescribed Ultram.  Tr. 235-244.

Between February 7, 2008, and February 28, 2008, Dr. Southerland noted that Plaintiff's condition was improving, but he continued to experience moderate pain.  Tr. 246-257, 563-573. Although he felt he would be able to release Plaintiff back to work soon, he had not yet seen enough improvement.  Tr. 246-257.  It appears as though Dr. Southerland wrote Plaintiff work absence excuses from February 13 thru 20, as well as February 25 and 26.  Tr. 503-505. However, no further excuses are contained in the record.

On February 15, 2008, Dr. Roy Russell treated Plaintiff for left foot and leg pain.  Tr. 291. He reported recently hitting his shin and experiencing increasing pain.  Dr. Russell noted tenderness and a break in the skin over the shin.  The vein also appeared to be inflamed.  He diagnosed Plaintiff with a contused leg, some phlebitis, and possible early cellulitis.  Plaintiff was prescribed Keflex, Aspirin, and elevation.  Tr. 291.

On June 24, 2008, Dr. Southerland wrote a letter indicating that he had treated Plaintiff since 1983.  Tr. 214.  He noted that Plaintiff had missed quite a bit of work due to back pain. Dr. Southerland also stated that Plaintiff was 100 pounds overweight.  He was of the opinion Plaintiff could sit, intermittently lift heavy objects with subsequent pain, carry light objects intermittently, and handle objects.  Dr. Southerland indicated that Plaintiff could not stand for prolonged periods of time due to back pain, and suffered pain when traveling.  Objectively, he

AO72A
(Rev. 8/82)

reported palpable muscle spasms and edema.  In his opinion, Plaintiff was disabled and in overall poor health.  Tr. 214.

On July 3, 2008, Dr. Russell saw Plaintiff in follow-up for his diabetes.  Tr. 589.  His blood sugar readings had been running over 200, but Plaintiff was very reluctant to get on insulin.  He had seen Dr. Houri in the past, but said he had allowed his Amaryl/Glimepiride prescription to run out.  Plaintiff stated that he had called to schedule another appointment, but was told it would be a while.  Therefore, he opted to see Dr. Russell.  At this point, Plaintiff had also stopped taking the Avandia (also used to treat diabetes) and was only taking Glucophage.  His weight was down to 262 pounds, but Dr. Russell noted that his diabetes was still not controlled.  Plaintiff was provided medication refills and referred back to Dr. Houri.  Tr. 589.

On August 5, 2008, Plaintiff was treated for a cough secondary to an irritated throat.  Tr. 587.  He also complained of urinary frequency and dry mouth.  An EKG revealed an old inferior infarction, possibly an old anterior septal infarction, but chest x-rays were normal.  Tr. 591.  Dr. Russell diagnosed Plaintiff with uncontrolled diabetes and referred him back to the endocrinologist.  He voiced his belief that Plaintiff would be placed on insulin.  Tr. 587.

On August 14, 2008, Plaintiff complained of lower back pain in his left lumbar region with no radiation.  Tr. 585.  He and Dr. Russell discussed his chiropractic treatment and treatment by Dr. Cheyne.  Dr. Russell noted that his triglycerides were still elevated, as was his blood sugar.  He suggested Plaintiff try Tricor, but Plaintiff had no insurance.  On examination, some tenderness was noted over the left lumbar muscles.  Plaintiff was instructed regarding proper lifting techniques and strengthening exercises.  He requested Hydrocodone and was given

7

a prescription for 40 Lorcet tablets.  Plaintiff also agreed to see an endocrinologist regarding his diabetes.  Tr. 585.

This same date, Dr. Southerland noted that Plaintiff stopped by to drop off paperwork for his disability claim.  Tr. 574.  He stated that he did not believe he could help Plaintiff due to his disability, and advised him to return only if the pain continued.  Tr. 574.

On August 15, 2008, Dr. Southerland completed an RFC assessment.  Tr. 507-509.  He concluded that Plaintiff could sit for 30 minutes for a total of 6 hours in an 8-hour workday; stand 1 to 2 hours for a total of 6 hours; walk less than 15 minutes for a total of 1 hour; lift up to 10 pounds frequently but never over 20 pounds; carry up to 5 pounds continuously but never over 20; occasionally bend, crawl, reach above head, and crouch; and, never squat, climb, stoop, kneel or operate foot controls.  Dr. Southerland also opined that Plaintiff would need to take unscheduled breaks and would likely miss three days of work per month due to his impairments.  In addition, he would need to elevate his feet.  Dr. Southerland stated that Plaintiff had worked the last year or two in considerable pain, having no choice but to do so because he had to pay bills.  Tr. 507-509.

On October 31, 2008, Dr. Southerland noted that Plaintiff would return for further treatment, only if he thought the treatment helped him.  Tr. 575.

On November 26, 2008, Plaintiff complained of bilateral ear aching.  Tr. 583.  Dr. Russell noted tenderness over his TMJ joints.  Plaintiff reported grinding his teeth so much at night that he would wake up with blood in his mouth.  Dr. Russell prescribed a nightguard, Mobic, and a follow-up appointment with his dentist.  Tr. 583.

8

On December 28, 2008, Dr. Ronald Myers completed a Medical Source Statement.  Tr. 577-581.  He noted Plaintiff's moderate pain due to degenerative disk disease of the lumbar spine with disk bulge, morbid obesity, obesity, left shoulder pain status post fracture, and CAD status post 2 to 5 stents.  Objective testing had revealed a limited range of motion in Plaintiff's lumbar spine and a wide gait secondary to his obesity.  His ability to squat and arise from a squatting position was limited by lower back pain.  Dr. Myers was of the opinion that Plaintiff could sit for one hour at a time for a total of three hours; stand for one hour for a total of two hours; walk no more than ten minutes for a total of two hours; occasionally lift and carry up to twenty pounds, bend, squat, crawl, stoop, crouch, kneel, and drive automotive equipment; and, never push/pull with his left hand, climb, reach above his head, be exposed to unprotected heights, or be around moving machinery.  He also determined that Plaintiff would need unscheduled breaks and would miss more than four days of work per month.  Tr. 577-581.

IV.   **Discussion**:

Plaintiff contends that the ALJ erred by failing to properly consider his subjective complaints, failing to consider Plaintiff's obesity in combination with his other impairments, failing to give the opinions of Drs. Southerland and Myers the appropriate weight, determining Plaintiff could perform a limited range of light work, and failing to include all of Plaintiff's limitations in the hypothetical questions addressed to the vocational expert.

A.   **Subjective Complaints/Severity of Impairments:**

When evaluating the credibility of plaintiff's subjective complaints the ALJ is required to make an express credibility determination detailing his reasons for discrediting the testimony. *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

9

AO72A
(Rev. 8/82)

The standard of evaluation is not whether plaintiff experiences pain, but if the pain alleged is intense enough to cause functional limitations. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding that the real issue is not whether the plaintiff is experiencing pain, but how severe and whether it prevents him from performing any kind of work).

An ALJ may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ is required to take into account the following factors in evaluating the credibility of a claimant's subjective complaints: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *See id.* The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. *Masterson v. Barnhart,* 363 F.3d 731, 738 (8th Cir.2004). However, the ALJ need not explicitly discuss each *Polaski* factor. *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir.2004). The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Id.* Even so, the ALJ may discount a claimant's subjective complaints if there are inconsistencies between the alleged impairments and the evidence as a whole. *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001); *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).

## 1.    Physical Limitations:

In the present case, plaintiff alleged disability due to lower back pain. As previously noted, an MRI had revealed a disk bulge at the L4-5 level mildly eccentric to the left that might be impinging minimally upon the inferior recess of the neural foramina on the left and a mild

10

spur. Tr. 280.  The L5-S1 level showed mild disk bulging also with minimal eccentric to the left and no encroachment.  Tr. 280.  However, since Plaintiff's injury in 2007, his treatment has primarily consisted of chiropractic treatments and other conservative measures.  *See Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with plaintiff's allegations of disabling pain).  Although he was prescribed pain medication on occasion, we can find no indication in the record to show that Plaintiff was consistently taking prescription pain mediation for his pain.  *See Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) (lack of strong pain medication was inconsistent with disabling pain); *Rankin v. Apfel*, 195 F.3d 427, 429 (8th Cir. 1999) (infrequent use of prescription drugs supports discrediting complaints).  The record is also devoid of records of emergency room visits resulting from his alleged severe and disabling pain.  Likewise, we can find no evidence to indicate that surgery was ever indicated or suggested to him by a physician.  In fact, physical exams have yielded only "some tenderness" over the left lumbar muscles, a limited range of motion in Plaintiff's lumbar spine, edema, and muscle spasm.  *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider).  Therefore, while we do believe Plaintiff suffered from a moderate level of pain, we do not find that the evidence supports a finding of disability due to lower back pain.

## 2.   Non-Severe Impairments:

The ALJ also concluded that Plaintiff's diabetes, status post fracture of the left clavicle, and obesity were non-severe impairments.  An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities.  *See Bowen v. Yuckert,* 482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d

11

119 (1987); 20 C.F.R. § 404.1521(a).  If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two. *Page v. Astrue,* 484 F.3d 1040, 1043 (8th Cir. 2007).  It is the claimant's burden to establish that his impairment or combination of impairments are severe.  *Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir. 2000).  Severity is not an onerous requirement for the claimant to meet, *see Hudson v. Bowen,* 870 F.2d 1392, 1395 (8th Cir.1989), but it is also not a toothless standard, and we have upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing.  *See*, *e.g.*, *Page*, 484 F.3d at 1043-44; *Dixon v. Barnhart,* 353 F.3d 602, 605 (8th Cir. 2003); *Simmons,* 264 F.3d at 755; *Gwathney v. Chater,* 104 F.3d 1043, 1045 (8th Cir. 1997); *Nguyen v. Chater,* 75 F.3d 429, 431 (8th Cir. 1996).

We note that Plaintiff was diagnosed with uncontrolled diabetes.  However, the evidence also makes clear that Plaintiff failed to confer with the endocrinologist as recommended by Dr. Russell, did not want to be placed on insulin, failed to refill his prescriptions as directed, stopped medications on his own, and did not watch his diet as is crucial for diabetics to control their disease.  Tr. 587, 589.  There is also no indication in the record that Plaintiff's condition was severe enough to warrant hospitalizations or other emergency treatment.  In fact, had Plaintiff been compliant with his medication and diet, it is highly probable that his condition would have improved.  *Brown v. Barnhart*, 390 F.3d 535, 540-541 (8th Cir. 2004) (holding that the ALJ properly discounted treating physician's opinion where record showed the plaintiff was non-compliant with prescribed treatment without good reason).  Accordingly, we agree with the ALJ's determination that Plaintiff's diabetes was non-severe.

12

With regard to Plaintiff's shoulder injury, the evidence does reveal that Plaintiff suffered a fracture to this area in 2006.  Tr. 336-349.  However, we note that Dr. Bolyard released him from his care in December 2006, after only two months of conservative treatment.  Tr. 336-349.  No work limitations were imposed at that time.  And, Plaintiff has not sought treatment for shoulder pain since that date.  As there is no evidence to indicate that Plaintiff's shoulder injury has left him with a permanent, disabling impairment, we find substantial evidence to support the ALJ's severity rating.

Likewise, although Plaintiff has been diagnosed with obesity, we can find no evidence to show that this impairment, standing alone or when considered in combination, is disabling.  While we do believe that his obesity has exacerbated his back pain, as excessive weight tends to do, and has probably had some impact on his diabetes, we note that Plaintiff has refused repeated suggestions to exercise, watch his diet, and lose weight.  Plaintiff contends that his back pain prohibits him from exercising and that the stretching exercises do not help his pain.  However, on an adult function report, we note that Plaintiff reported the ability to both walk and swim, stating that swimming helped his back.  Tr. 139-144.  We can find no evidence to indicate that Plaintiff's back condition worsened after completing this report.  Thus, his statements concerning his ability to exercise appear to be at odds.  Accordingly, we find his refusal to follow medical advice regarding weight loss and exercise to be evidence of his resistance to treatment, rather than evidence to support his disability.  *See Brown*, 390 F.3d at 540-541.

The record does indicate that Plaintiff had also been diagnosed with CAD, a TIA, and sleep apnea.  However, Plaintiff did not complain of symptoms associated with these conditions during the relevant time period.  In fact, in 2002, records indicate that Plaintiff was no longer

13

suffering from chest pain or the residuals of his TIA and that his sleep apnea was controlled via the use of a CPAP.  "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (quotation omitted).  Accordingly, it is clear to the undersigned that these impairments did not rise to the level of severe impairments during the relevant time period.

### 3.   <u>Activities of Daily Living</u>:

Plaintiff's own reports concerning his daily activities also undermine his claim of disability.  On paperwork he filed with the Administration, Plaintiff reported the ability to feed his cats and change their litter box; care for his personal hygiene with some assistance; prepare meals daily; do laundry; go outside three to four times per day; perform other household chores requiring no lifting, bending, or stooping; walk; drive a car; ride in a car; shop for groceries; pay bills; count change; handle a savings account; use a checkbook/money orders; watch television; play cards with friends; swim; go to church; go to the mall; and go to restaurants.  Tr. 139-144. Plaintiff also reported no difficulty getting along with others, stated that he got along with authority figures well, and reported a "good" ability to handle stress.  Tr. 144-145.  *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir.

14

1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).

### B.     Assessments of Drs. Southerland and Myers:

Plaintiff contends that the ALJ failed to properly consider Dr. Southerland's RFC assessment of Plaintiff.  We note that, although, Plaintiff had a long standing treatment relationship with Dr. Southerland, Dr. Southerland was a chiropractor, not a medical doctor. Acceptable medical sources include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists. 20 C.F.R. §§ 404.1513(a), 416.913(a) (2007).  According to Social Security regulations, there are three major distinctions between acceptable medical sources and the others: (1) Only acceptable medical sources can provide evidence to establish the existence of a medically determinable impairment, (2) only acceptable medical sources can provide medical opinions, and (3) only acceptable medical sources can be considered treating sources, 20 C.F.R. §§ 404.1527(a)(2), (d) (2007) and 416.927 (a)(2), (d) (2007).  Being a chiropractor, Dr. Southerland is not an acceptable medical source who is qualified to provide an assessment of Plaintiff's work-related limitations.

We also note that Dr. Southerland's opinion is inconsistent with his own treatment records and with an assessment he made one month prior.  Dr. Southerland repeatedly noted improvement in Plaintiff's condition and noted in 2007 that he could return to work.  It was not until Plaintiff requested that he complete paperwork for the Administration that Dr. Southerland began stating that Plaintiff was disabled.  In fact, just one month before Plaintiff asked him to complete an RFC assessment, Dr. Southerland had concluded that Plaintiff could sit without limitation, intermittently lift heavy objects, intermittently carry light objects, and handle objects

15

without difficulty.  Tr. 214.  He did note that prolonged standing was difficult for Plaintiff, but made no mention of a need to elevate his feet or a need for unscheduled breaks.  We do not find that his records, documenting edema and moderate muscle spasms, support his August 2008 opinion that Plaintiff was disabled.

We are also cognizant of Dr. Myers opinion.  However, we can find no treatment records to substantiate Dr. Myers' assessment.  It appears as though Plaintiff consulted with Dr. Myers on only one occasion, and from this one evaluation, he opined Plaintiff was disabled.  *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence).  In reviewing his assessment, we note limited objective evidence to support his conclusions.  He stated that Plaintiff suffered from only moderate pain due to DDD of the lumbar spine with a disk bulge, morbid obesity, left shoulder pain, and CAD.  His examination of Plaintiff yielded a limited range of motion in Plaintiff's lumbar spine, but Plaintiff was able to squat and arise from a squatting position, albeit it while experiencing some pain.  We can find no explanation for his finding that Plaintiff would need unscheduled breaks or would miss more than four days of work per month.  In fact, the evidence of record reveals that Plaintiff only complained of frequent urination on one occasion and was not provided with any work excuses after February 2008.  Tr. 503-505, 587.  We can also find no evidence to indicate that Plaintiff sought treatment on a frequent enough basis to substantiate a finding that he would likely miss four days of work per month due to his symptoms.  Therefore, we agree with the ALJ's determination that Dr. Myers opinion was not entitled to substantial weight.  This does not,

16

however, mean that it was entitled to or given no weight whatsoever.  The portions of the opinion supported by the overall record were properly weighted.

     **C.**     **Economic Hardship:**

     Plaintiff contends that his failure to seek more consistent treatment, consult with the endocrinologist as advised, and refill his medications as prescribed should be dismissed due to economic hardship.  Clearly, if the claimant is unable to follow a prescribed regimen of medication and therapy to combat his disabilities because of financial hardship, that hardship may be taken into consideration when determining whether to award benefits.  *Tome v. Schweiker,* 724 F.2d 711, 714 (8th Cir. 1984).  While these hardships can be considered in determining whether to award a claimant benefits, the fact that he is under financial strain is not determinative. *Benskin v. Bowen,* 830 F.2d 878, 884 (8th Cir. 1987).  In this case, there is no indication that he sought out other services that would have enabled him to obtain his prescription medications for free or at a reduced cost.  *See Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992) (it is inconsistent with the degree of pain and disability asserted where no evidence exists that claimant attempted to find any low cost or no cost medical treatment for alleged pain and disability).  Likewise, there is no evidence that he was ever refused treatment due to his lack of insurance and inability to pay.  *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (holding that the ALJ correctly discounted the plaintiff's subjective complaints when there was no evidence that the plaintiff was ever denied medical treatment due to financial reasons). Accordingly, we can not say that his failure to take his medication as prescribed or seek more consistent treatment  is excused by his financial strain.

AO72A
(Rev. 8/82)

### D.    <u>The ALJ's RFC Assessment</u>:

Plaintiff contends that the ALJ's RFC assessment is not supported by substantial evidence.  RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  A disability claimant has the burden of establishing his RFC.  *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004).  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or his limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

The ALJ properly considered plaintiff's subjective complaints, the objective medical evidence, Dr. Southerland's assessment, Dr. Myer's assessment, and the RFC assessment of the non-examining, consultative doctor.  On July 9, 2008, Dr. Jerry Thomas completed a physical RFC assessment.  Tr. 311-313.  After reviewing only Plaintiff's medical records, he determined Plaintiff's impairment was non-severe.  This assessment was affirmed by Dr. Jerry Mann on August 5, 2008.  Tr. 314-316.  However, the ALJ dismissed this assessment because it was clearly contradicted by the overall medical record.

18

Plaintiff contends that the ALJ's dismissal of both Drs. Southerland and Myers' opinions and the RFC from Dr. Thomas leaves the record void of an RFC assessment. And, without an assessment, the ALJ could not properly determined Plaintiff's ability to perform work-related activities. While we note that the ALJ did not find any of the doctors' assessments to be entirely credible, she did find evidence to support a number of their findings. Substantial evidence, including the medical records and Plaintiff's own reports concerning his abilities, supports a finding that Plaintiff could perform light work with the following limitations: he could sit for one hour at a time for a total of six hours; stand for two hours for a total of six hours, walk for thirty minutes for a total of two hours; could not push/pull with the bilateral lower extremities; could only occasionally balance, stoop, crouch, crawl, and climb ramps and stairs; and, could never kneel or climb ladders, ropes, or scaffolds. We can, however, find no substantial evidence to show that Plaintiff would need to elevate his feet, would require unscheduled breaks, or would miss a specific number of days of work per month. Therefore, after reviewing the entire medical record, we conclude that substantial evidence supports the ALJ's RFC assessment. Accordingly, the ALJ's RFC will stand.

**E.   Vocational Expert's Testimony:**

Testimony from a vocational expert based on a properly-phrased hypothetical question constitutes substantial evidence. *See Cruze v. Chater,* 85 F.3d 1320, 1323 (8th Cir. 1996); *cf. Hinchey v. Shalala,* 29 F.3d 428, 432 (8th Cir. 1994) (when hypothetical question does not encompass all relevant impairments, VE's testimony does not constitute substantial evidence to support the ALJ's decision). The ALJ's hypothetical question needs to "include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Id.* (citing

19

AO72A
(Rev. 8/82)

*Stout v. Shalala,* 988 F.2d 853, 855 (8th Cir.1993)); *see also Morse v. Shalala,* 32 F.3d 1228, 1230 (8th Cir.1994).

The vocational expert indicated that a person of plaintiff's age, education, and work background with the above RFC, could still perform work Plaintiff's PRW as a meat grader.  Tr. 184-185.  Although Plaintiff contends that he would require unscheduled breaks, would need to elevate his feet, and would likely miss two or more days of work per week, we can find no evidence in the record to support these limitations.  Accordingly, we find the expert's testimony to constitute substantial evidence.

Plaintiff also contends that the ALJ failed to make specific findings regarding the exertional and non-exertional requirements of his PRW as a meat grader.  We note, however, that Plaintiff provided the ALJ with his own description of the requirements of the job he performed Tr. 34-38, 114, 140.  Further, the vocational expert associated this position with that of a meat grader, which is defined in the Dictionary of Occupational Titles as a light job involving no climbing, balancing, stooping, kneeling, crouching or crawling.  Tr. 184-185.  DICTIONARY OF OCCUPATIONAL TITLES § 529.687-106, *at* www.westlaw.com.  As such, we find that this job fits within the RFC assessment determined by the ALJ.

**V.      Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this <u>8th</u> day of February 2011.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

21